# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DEANDA, | ) 1:08cv1052 GSA |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) (Doc. 19) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Jose Deanda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///
///
///

---

[1] Both Plaintiff and Defendant consented to the jurisdiction of the United States Magistrate Judge Gary S. Austin on August 5, and 20, 2009, respectively. (Docs. 10 and 11).

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial application for Disability Insurance benefits and Supplemental Security Income ("SSI") on January 25, 2005, alleging disability since December 31, 2003. AR 49-58. His application was denied initially on July 1, 2005, and on reconsideration on September 28, 2005. A.R. 36-41. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 10. ALJ William C. Thompson, Jr. held a hearing on May 25, 2007, and denied benefits on September 13, 2007. AR 14-21;312-334. On May 24, 2008, the Appeals Council denied review. AR 5-8.

Hearing Testimony

ALJ Williams held a video hearing on May 25, 2007. AR 312. Plaintiff appeared in Fresno, California. ALJ Thompson presided over the hearing in Stockton, California. AR 312. Plaintiff appeared with his attorney, Ms. Melissa Proudian. AR 314.

At the time of the hearing, Plaintiff was forty nine years old. AR 316. Plaintiff completed the sixth grade. AR 316. He does not have a GED, however, Plaintiff is able to read and write. AR 316. Plaintiff is five feet eleven inches tall and weighs two hundred and eighteen pounds. AR 317. Plaintiff is married but is legally separated and is in the process of getting divorced. AR 317.

From 1984 until 2003, Plaintiff worked for two different electronics companies testing and inspecting computers. AR 318-319. He held each position for approximately ten years. AR 318- 319. He was laid off in 2003. AR 319. After he was laid off, he has held several short term jobs. AR 318. He worked for a furniture company for approximately ten or eleven months. AR 318. He also worked as a lab inspector for a juice company but was let go after one month. 318. Plaintiff most recently worked full-time in April 4, 2007, as a sales person for an auto dealer for approximately three months. AR 317. Plaintiff was let go because the company was not satisfied with his work. AR 318.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff was diagnosed with an eye tumor which was partially removed. AR 320. Plaintiff is being treated by an endocrinologist, a cancer radiologist, and his primary care physician. Plaintiff sees his endocrinologist once every six months, his neurologist once a year, and his primary care physician once every two weeks. AR 320. Plaintiff goes for MRI's to monitor the activity of the tumor. He takes Prednisone and Tylenol for headaches. AR 320. Plaintiff did not receive radiation treatment after the surgery because the tumor is in between his eyes and may cause burning on his optical nerve resulting in increased blindness. AR 320.

Plaintiff is unable to work currently because he has problems with concentration and he suffers from fatigue. He also has poor vision and needs to eat and drink frequently. AR 321. He suffers from back and shoulder pain. The shoulder pain is the result of a dislocated shoulder which he suffered in 2004. AR 321. Plaintiff did not have surgery for his shoulder, however he did receive physical therapy. AR 322. He does not receive treatment for his shoulder and he was told there is no cure for the injury. AR 321, 322. Plaintiff has difficulty reaching above his right shoulder and flexing his arm without experiencing pain. AR 322. He currently takes Tylenol for pain management. AR. 322.

Plaintiff also has two or three herniated discs in the lower lumbar region of his back. AR 323. His problems with his back began in 2003 or 2004. He is able to walk four or five blocks but not more because he becomes exhausted and experiences pain down his legs. AR 323. Plaintiff does not use a cane or a crutch. AR 324. He is able to stand for approximately one half hour and can sit in one position for approximately ten to fifteen minutes. AR 324. Plaintiff is able to lift ten to fifteen pounds. He does not smoke and has not had any problems with drugs or alcohol. AR 324-325.

Plaintiff has difficulty with his memory and concentration. AR 324-325. He is only able to concentrate for five to fifteen minutes and then he needs to take a break for approximately five to ten minutes before returning to his task. AR 325. Plaintiff also experiences blurred vision and sees black spots. AR 326. The episodes of blurred vision occurs approximately fifteen times a day and lasts five minutes. AR 327. He needs to take a break for approximately five to ten minutes before returning to his activity. AR 327.

Plaintiff also has difficulty with balance due to his vision and back problems. AR 327. He is unable to walk in a straight line. AR 327. Plaintiff used a walker in late 2003 and early 2004. AR 328. He also has problems with numbness in his legs which prevents his ability to function and creates difficulty sleeping. AR 328.

Vocational Expert (VE) Dave Detmer testified and classified Plaintiff's past work experience in electronics and in automobile sales as light. AR 330. The VE was asked to assume a worker of Plaintiff's education and work experience who can lift and carry twenty pounds occasionally, ten pounds frequently, can stand and walk a total of four hours, can sit a for an unlimited period of time, can occasionally reach overhead, bend, stoop, twist, squat, kneel, crawl, and climb stairs, but should not be required to climb ladders or scaffolding or work at heights or around hazardous moving machinery. AR 330.

VE Detmer advised that a worker possessing these characteristics could not perform Plaintiff's past relevant work, however this worker could perform other jobs in the regional or national economy. A.R. 331. Consistent with a unskilled light level which accommodates the four hour sitting and standing limitation, this worker could perform jobs such as an office helper, cashier, and parking lot attendant. AR 331. There are 16,000, 27,500, and 8,500 of those jobs, respectively, in California. AR 331. The VE also testified that Plaintiff could perform sedentary jobs as an electronics assembler and that there are approximately 50,000 of these jobs in the California. AR 332. However, when non-exertional restrictions are added to the hypothetical consisting of taking ten to fifteen breaks throughout the day for five to ten minutes due to blurred vision, the alternative jobs previously identified would be eliminated. A.R. 333.

Medical Record

In December 2003, Plaintiff had acute headaches and blurred vision which led to the diagnosis of a 2.8 cm pituitary tumor. AR 105. In February 2004, Plaintiff received treatment at Community Outpatient Rehabilitation Center. AR 283-288, 293-296. At that time, the physical therapist noted that the risk of falls was low, but that Plaintiff veered to lift side, was kyptotic, and had occasional dizzy spells. AR 288, 293.

On March 16, 2004, Dr. Brian Curtis M.D., surgically removed Plaintiff's tumor at Community Medical Center. AR 191-203. AR 105-108. Plaintiff was seen at the University Medical Center on June 6, 2004, after falling off his bicycle, dislocating his shoulder, and injuring his leg. AR 122-126. A Magnetic Resonance Imaging scan ("MRI") dated October 8, 2004, showed L5-S "Left NNP" and "C5-6, C 6-7, 1 + NP." AR 175. Plaintiff was referred to physical therapy. AR 175. Discharge notes dated April 8, 2005, indicated that Plaintiff was doing better and met his treatment goals but that he continued to experience pain. AR 162. Plaintiff continued to receive treatment at the University Medical Center from August through September 2004. AR 121-126, 179-190.

On September 15, 2004, Plaintiff was evaluated by Dr. Wong of the California Cancer Center at the request of Dr. Curtis. AR 105-108. Dr. Wong noted that Plaintiff's headaches had resolved and that blurred vision still existed but was much improved. AR 105. Dr. Wong also noted that Plaintiff was enjoying stable and good overall health and that his vision was stable. AR 106.

On October 4, 2004, an opthamology consult at Eye-Q Vision Care revealed moderate visual field defects in the right eye's lower quadrant and the left eye's upper quadrant. AR 111-113. On January 21, 2005, Plaintiff was seen at the University Medical Center for complaints of blurred vision, fatigue and night sweats. AR 169. At that time, the doctor diagnosed him with pituitary apoplexy, panphypopituitarism, and visual field defects. AR 168. The doctor also noted that Plaintiff had a permanent endocrine deficiency which is a permanent disability and requires permanent lifetime hormonal treatment. AR 168.

On March 1, 2005, a MRI of Plaintiff's brain revealed no recurrent tumor however, Plaintiff was diagnosed with left maxillary acute sinusitis with chronic disease in the left maxillary sinus and ethmoid sinus. AR 115, 230. On April 5, 2005, further examination at Eye-Q Vision Care indicated a temporal defect with improvement of the inferior temporal defect in the right eye, and on the left eye, an inferior temporal defect with improvement in the superior temporal defect. AR 236. Plaintiff was diagnosed with bitemporal visual field defect-migrating. AR 236. On May 9, 2005, notes from Eye-Q Vision Care indicate a large dense superior temporal

defect in the right eye extending into a moderate superior defect. In the left eye, a large dense interior temporal defect was noted that was unchanged from one month ago but migrated from October 2004. AR 235. Plaintiff was again diagnosed with bitemperal visual field defect with a history of migration. AR 235.

On May 20, 2005, Gary Waters, M.D., completed a ophthalmological examination. AR 136. After noting Plaintiff's history of pituitary adema with visual field defects, Dr. Watson noted Plaintiff's visual acuity was consistent with the degree of pathology and diagnosed Plaintiff with a visual field deficit, secondary to pituitary ademona effect. AR 136-137.

On May 26, 2005, Plaintiff was examined by Paul Casner, M.D., of MDSI Physician Services, at the request of the Social Security Administration. AR 140-144. The evaluation revealed mild limitations in the extension of the lumbar spine with full forward flexion and positive straight leg raising. AR 142-143. Dr. Casner diagnosed Plaintiff with : 1) lumbar pain with radiculitis, possibly due to disc disease, 2) fatigue due to hypogonadism and other effects of panhypopituitarism and medications, and 3) recurrent shoulder pain due to past dislocation. Dr. Casner opined that the claimant could stand and walk four hours in an eight hour day, sit for an eight hour work day, lift/carry up to twenty pounds occasionally and ten pounds frequently, perform no forward bending, stopping squatting and kneeling, was limited in overhead reaching and limited in walking distance and stairs. AR 143.

On June 20, 2005, Dr. James Peery, M.D., a state agency doctor reviewed Plaintiff's file and opined that Plaintiff could perform light work with standing/walking limited to four hours, sitting for six hours, occasional pushing/pulling with the right upper extremity, occasional climbing, frequent balancing, and occasional stooping, kneeling, crouching, crawling, and limited overhead reaching. AR 145- 151. Dr. Perry opined that Plaintiff's vision was sufficient to read most printed materials and that his visual field restriction was not significant. AR 148. This assessment was reviewed and adopted on September 21, 2005, by Dr. Lavanya Bobba, M.D., another state agency doctor. AR 152.

A subsequent MRI of Plaintiff's pituitary gland was performed on September 7, 2009, at the Community Regional Medical Center which revealed that a "small amount of soft tissue

6

along the right lateral sella of undetermined significance "was present [and] "minimal frontal white matter T2 hyperintensities may be seen with migraine headaches among other possibilities." AR 229.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2008. AR 16. Although the ALJ determined that Plaintiff suffered from the severe impairments of status post pituitary tumor and degenerative disc disease of the lumbar spine, he nonetheless found that this severe impairments did not meet or equal any listing impairments resulting in a disability finding. A.R. 16 . Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of work between sedentary and light work.[3] AR 16. Considering that functional limitation, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 18. Applying the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpt. P, App. 2, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. A.R. 19. Based on these factors, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. AR 20.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

---

[3] Specifically, the ALJ found that Plaintiff can lift and carry twenty pounds occasionally, ten pounds frequently, can stand and walk a total of four hours in an eight hour day, can sit a for a six hour period, can occasionally balance, reach overhead, stoop, kneel, crouch and crawl, but should not be required to climb ladders, scaffolding, stairs or work at heights or around dangerous machinery. AR 17.

The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since December 31, 2008; (2) did have impairments including status post pituitary tumor and degenerative disc disease of the lumbar spine that are considered "severe" based on the requirements in the Regulations (20 CFR 404.1520(c) and 20 CFR §§ 416.920 (c)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926,); (4) had a residual functional capacity to perform a range of work between sedentary and light

work; and (5) that he could perform jobs that exist in significant numbers in the national economy. AR 16-20.

In reaching these conclusions, the ALJ found although Plaintiff's condition could be expected to produce some symptoms, Plaintiff was not entirely credible regarding the intensity, persistence, and limiting effects of those symptoms.  AR 18. Plaintiff contends that the ALJ's decision is erroneous because he failed to assess his visual impairment and improperly rejected his testimony.[4]

## DISCUSSION

A.   Assessment of Plaintiff's Visual Impairment

Plaintiff argues that the ALJ failed to adequately assess his visual impairment. Specifically, Plaintiff contends that the ALJ misread the medical record and that Plaintiff's visual impairment is a significant nonexertional impairment which the ALJ failed to properly consider. Plaintiff concedes that his visual impairment does not "meet" the criteria of listing under 20 C.F.R. Pt. 404, Subpt P, App. 1. However, contrary to the ALJ's characterization of his visual impairment as slight, Plaintiff contends that the medical records indicate that Plaintiff's visual impairment is moderate, chronic, and progressively getting worse and therefore his condition equals one of the listed impairments.

As a preliminary matter, the Court disagrees with the basis of Plaintiff's contention that his condition worsened after his tumor was removed.  In support of this assertion, Plaintiff argues that he continued to veer to his right side, had dizzy spells, and was kyptotic after his surgery and after completing two months of physical therapy.  AR 288.  However, a review of the records Plaintiff relies upon indicates that he received physical therapy in February 2004, *prior* to his surgery in March 2004, not after.  In fact, an evaluation done by Dr. Wong shortly after his surgery in September 2004, indicates that Plaintiff still had blurred vision, but his vision had stabilized, and that Plaintiff was enjoying stable and good overall health. AR 105-106.

---

[4] In the Opening Brief Plaintiff made a general allegation that the ALJ failed to carry the Administration's burden at step 5, however, Plaintiff never expounded on this argument.  Accordingly, the Court has not addressed this issue.

9

Additionally, the Court is not persuaded by Plaintiff's argument that in January 2005, statements in treatment notes made by his physician indicating that Plaintiff has a permanent endocrine deficiency, will never get better, and that his permanent disability requires lifetime hormone replacement establishes that he is disabled. The Court agrees with the Social Security Administration that this note appears to be describing Plaintiff's endocrine deficiency and was not intended to be a diagnosis for establishing permanent disability. There is also no indication in that note that Plaintiff's condition cannot be regulated by medication.

Notwithstanding the above, the Court agrees that the ALJ mischaracterized Plaintiff's visual defect as slight. In reviewing the Plaintiff's visual impairment, the ALJ noted that while Plaintiff's medical impairments could reasonably expect to produce some of the symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. AR 18. The ALJ specifically noted the following:[5]

> On March 16, 2004, the claimant underwent a pituitary tumor resection. On June 6, 2004, the claimant fell off his bicycle and injured his right shoulder. On September 15, 2004, the claimant was doing well and was enjoying stable and overall good health. On March 1, 2005, a brain MRI revealed no recurrent tumor. On May 20, 2005, an ophthalmologist opined that claimant *has a slight visual* field defect secondary to pituitary adenoma status post resection. The claimant has been treated with testosterone since the brain surgery.
> AR 18 (citations omitted).

In addition to the above, the ALJ noted that Plaintiff's history of pituitary surgery was severe but the ongoing effects were minor and Plaintiff's hypopituitarism is regulated with

---

[5] The Court notes that the ALJ makes the following statement with regard to Plaintiff's testimony :

> The claimant testified that he injured his back in December 1997 and still has back pain. He said that he takes Ibuprofen for the pain. He said that he also takes medication for depression and high blood pressure. He said that he is not able to stand for long periods and cannot stand while washing dishes. He said that he can lift 15-20 pounds and sit/stand for 30 minutes. He said that he has neck pain all the time and that he is not able to type for more than 15 minutes.
> AR 18.

The Court has reviewed the record and was unable to locate these facts in Plaintiff's hearing testimony. Since the ALJ did not list citations to the record, it is not clear that this information even relates this Plaintiff or whether this information exists elsewhere in the record.

medication. AR. 19.  When addressing Plaintiff's visual impairment, the ALJ also noted that Plaintiff was able to ride a bicycle only a few months after brain surgery and was stable and doing well in less than twelve months. AR 19.

Although the ALJ correctly summarizes Plaintiff's condition shortly after the surgery, a review of the record shows that Plaintiff subsequently had visual defects, the severity of which are unclear.  Although the MRI performed in March 2005 showed no signs of a recurrent tumor, other evaluations did not characterize Plaintiff's visual defect as slight as the ALJ contends. AR 111-113;115, 230; 235-236.

For example, on October 4, 2004, an opthamology consult at Eye-Q Vision Care revealed *moderate* visual field defects in the right eye's lower quadrant and the left eye's upper quadrant. AR 111-113.  On April 5, 2005, further examination indicated a temporal defect with improvement of the inferior temporal defect in the right eye, and on the left eye, an inferior temporal defect with improvement in the superior temporal defect.  AR 236.   However, Plaintiff was diagnosed with bitemporal visual field defect-migrating.  AR 236. On May 9, 2005, notes from Eye-Q Vision Care indicate a large dense superior temporal defect in the right eye extending into a moderate superior defect.  AR 235.  In the left eye, a large dense interior temporal defect was noted that was unchanged from one month ago but migrated from October 2004.  AR 235.

Finally, nowhere in Dr. Watson's May 20, 2005 report which the ALJ relies upon does it state that the Plaintiff has a *slight* visual field defect.  In fact, after noting Plaintiff's history of pituitary adema with visual field defects, Dr. Watson only noted Plaintiff's visual acuity was consistent with the degree of pathology and diagnosed Plaintiff with a visual field deficit, secondary to pituitary ademona effect.  AR 136-137.  On the evaluation form, Dr. Watson *did not* check the box indicating that no significant visual field deficit is expected.  AR 137.  Thus, the true extent of Plaintiff's visual impairment is unclear as none of these physicians identified the extent of the limitations, or how these limitations effect Plaintiff's daily activities or his ability to work.

The regulations in Appendix I specify the requirements to establish medical equivalence of a listed impairment in Appendix I.  Medical equivalence will be found "if the medical findings

11

are at least equal in severity and duration to the listed findings." *Marcia v. Sullivan*, 900 F.2d 172, 174-177 (9th Cir. 1990); 20 C.F.R. § 404.1526. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records with the medical criteria shown with the listed impairment. S20 C.F.R. § 404.1526. "In determining whether a claimant equal a listing under step three of the disability process, the ALJ must adequately explain his evaluation or alterative tests and the combined effects of other impairments. *Marcia v. Sullivan*, 900 F.2d at 176. Here, the ALJ did not do so as his characterization of the medical evidence was not consistent with the documents themselves.

The court recognizes that it is the duty of the claimant to prove to the ALJ that he is disabled. 20 C.F.R. § 404.1512(a). To this end, he must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id.* For his part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001). However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

Here, it appears that the ALJ has misread the medical reports which he relied upon in his decision. Additionally, the medical records are unclear. Therefore, the Court will remand the

case for proper consideration of step three so that the ALJ can properly evaluate the medical evidence and order additional testimony or evaluations, as well as to articulate the basis of his decision.

The Social Security Administration urges this Court to consider the fact that Plaintiff did not complain of work-related visual limitations in questionnaires. It also argues that the state agency non-examining physician indicated that Plaintiff's visual field restriction was not significant. However, the ALJ did not rely on these factors as part of his analysis and the Court is not permitted to make ad hoc rationalizations for the ALJ.[6] AR 62-64, 80-81, 83. *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996). Further, the Court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions, *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). Finally, the opinions of non-treating physicians are substantial evidence where they are supported by clinical findings and objective tests. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When the ALJ rejects the opinion of an examining physician in reliance on the non-examining physician, "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Saelee v. Chater*, 94 F. 3d 520, 522 (9th Cir. 1996). However, in this case, the medical record is ambiguous. Although Plaintiff appeared to be doing better in September 2004, subsequent evaluations by the doctors indicate that Plaintiff was still experiencing visual defects that the ALJ failed to address. Therefore, the Court rejects these arguments.

B.   Rejection of Plaintiff's Testimony

Plaintiff also argues that the ALJ improperly rejected his testimony. Specifically, Plaintiff contends that the ALJ did not perform the required excess pain analysis. Instead, the ALJ relied

---

[6] The Court notes that Plaintiff did indicate in 2004 that he could no longer see. AR 69.

13

on the fact that Plaintiff was able to ride a bicycle only a few months afer surgery, was stable, and was doing well in less than twelve months.  AR 19.  Plaintiff argues that the record shows evidence of large migrating blind spots which was the primary reason Plaintiff was unable to return to work.  He contends that his visual field remains severely reduced as he testified.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).

In making this determination, the ALJ conducts a two-step analysis to assess subjective testimony.  Under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom.  *Tommasetti v. Astrue*, 533 F. 3d at 1039.  If the first step is met and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* Factors the ALJ may consider in weighing a claimant's credibility include "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id*. citing *Smolen v. Chater*, 80 F. 3d 1273 (9th Cir. 1996).  If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d at 959.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, Plaintiff testified that he is only able to concentrate for five to fifteen minutes and that he needs to take a break for approximately ten minutes before returning to his task. AR 325. Plaintiff further testified that he experiences episodes of blurred vision which last for five minutes approximately fifteen times per day. AR 327. As a result, he needs to take a break for approximately five to ten minutes before returning to his activity. AR 327. Plaintiff also reported seeing black spots. AR 326.

In rejecting this testimony, the ALJ relied on the fact that Plaintiff's suffered from *a slight visual* field defect, that Plaintiff was able to ride a bicycle only a few months after brain surgery, and he was stable and doing well in less than twelve months. AR 18-19. Given the in evidence in the medical record previously outlined, the ALJ did not provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. Further, the fact that Plaintiff was able to ride a bike only a few months after surgery is also not a clear and convincing reason for rejecting Plaintiff's testimony. This is especially true because as the ALJ noted, when doing so, Plaintiff had fallen off of the bicycle and injured his shoulder. AR 18, 19, 122-126. Accordingly, the ALJ's decision is not supported by substantial evidence.

////

///

**REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

In this case, the Court finds that remand for further proceedings is proper to allow the ALJ to properly review all of the medical evidence as outlined above and to reassess Plaintiff's credibility if necessary.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jose DeAnda and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 16, 2009**          /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE